DEWLING v. C. W. KLAPPERT'S SONS.

(Supreme Court, Appellate Term. November 29, 1907.)

MASTER AND SERVANT—MASTER'S LIABILITY—LOSS OF SERVANT'S TOOLS.

Where defendant subcontractor, who was bound by agreement to provide a locker wherein its employés might place their tools over night, provided a properly constructed locker and required the principal contractors to engage a night watchman, and no omission of duty by the

watchman appeared, and he was not shown to be incompetent, defendant was not liable for a theft of the tools.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by James W. Dewling against C. W. Klappert's Sons. Judgment for plaintiff, and defendant appeals. Reversed, and a new trial ordered.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Wesselman & Kraus, for appellant.
Charles Maitland Beattie, for respondent.

LEVENTRITT, J. The defendant is engaged in business as a general carpenter. In April, 1907, it had in its employ the plaintiff, a journeyman carpenter, on the building No. 235 West Twenty-Third street, on which it had the contract for the carpenter work. As part of its contractual duty toward the plaintiff and its other employés, the defendant had provided on the second floor of the building a tool box or locker, in which, at the close of each day's work, the tools of the workmen were placed and there remained until the following morning. During the night of April 2d the locker was forced open and the plaintiff's tools were stolen. The plaintiff sued to recover for the loss, basing his right upon allegations of the defendant's negligence in failing to care for and guard the locker and its contents. From a judgment in the plaintiff's favor, the defendant appeals.

The obligation of the defendant to furnish a locker for its employés attached by virtue of an agreement, to which the defendant was a party, entered into between the Master Carpenters' Association of the City of New York and the Joint District Council of Greater New York. Section 3 of article 10 of this agreement reads as follows:

"In buildings ten stories high or over, a lock-up to be provided by the employer on every fifth floor."

It is conceded that the locker provided by the defendant was properly constructed in every essential particular. In fact it appears that it was more than usually secure, and that more than ordinary care had been exercised in its construction. While the plaintiff does not pretend that there was any defect in the locker, he argues that the defendant owes him the duty, not only of furnishing the locker, but of guarding his property from possible loss or injury, and that he omitted to perform the latter duty. The defendant was a subcontractor. Under its agreement with the principal contractors, the latter undertook to employ a night watchman. This watchman testified that on the night of the burglary he went to the second floor of the building at 2 o'clock; that at that time the locker was securely fastened and undisturbed; that he then returned to the first floor, where he watched the remainder of the night.

Under the circumstances it cannot be said that any negligence on the part of the defendant was established. Its duty to the plaintiff to provide a locker was a contractual one, and there flowed therefrom the obligation to adopt every reasonable precaution to safeguard the

plaintiff's property against loss or injury—to exercise such care as an ordinarily prudent man would exercise in the protection of his own property. Such measures were adopted by the defendant. It not only supplied a properly constructed locker, but in its contract with the principal contractors it required them to engage a night watchman, whose duty it was to care for and guard the building and its contents. There is no proof of any omission on the part of the watchman to perform his duty, or any evidence of incompetency. The locker was on the second floor, and the evidence shows that, when the watchman was not occupied in going about the building, he remained on watch on the ground floor. The plaintiff rested upon the mere proof of his ownership and the loss of the tools. To sustain the judgment, therefore, would in effect be to hold the defendant liable as an insurer, which he was not under any aspect of the case. The liability for the loss of the plaintiff's property would attach only upon affirmative proof that the defendant had failed in the performance of some duty which it owed the plaintiff. There is no such proof. The judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.